UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MOHAMED M. EL KHARCHY, Petitioner, v. BRUCE SCOTT, et al., Respondent. | Case No. 2:26-cv-03132-TLF ORDER |

Immigration detainee, Mohamed El Kharchy, unrepresented by counsel, filed a habeas corpus petition under 28 U.S.C. § 2241, alleging a violation of his Fifth Amendment due process rights. Dkts. 5, 6. Petitioner seeks: (1) release from detention under the previous conditions of his release; (2) that respondents be enjoined from re-detaining him without notice and a pre-deprivation hearing before a neutral party; (3) enjoining the government from implementing more restrictive conditions of release including GPS monitoring or "ankle monitoring"; (4) ordering respondents to return all personal property seized, including cell phones. *Id.* Petitioner has also filed a "motion to request mailing evidence and treat my petition as unopposed." Dkt. 12.

The parties unanimously consented to the jurisdiction of a Magistrate Judge. Dkt. 3.

For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART the federal habeas petition (Dkts. 5, 6). Petitioner's "motion to request mailing evidence and treat my petition as unopposed" (Dkt. 12) is DENIED.

**BACKGROUND**

On September 6, 2023, petitioner, a native and citizen of Mauritania, was apprehended by U.S. Border Patrol ("BP") near San Ysidro, California and was determined to have entered the United States from Mexico. Dkt. 10 (Declaration of Christopher Hubbard ("Hubbard Decl.")) ¶¶ 3-4. On September 11, 2023, petitioner was issued a Notice to Appear ("NTA") charging him as inadmissible and removable under 8 U.S.C. § 1182(a)(6)(A)(i) as a non-citizen present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *Id.* ¶ 5; Dkt. 11 (Declaration of Peter Clark ("Clark Decl.")), Ex. 1, NTA. That same day, petitioner was released from immigration custody pursuant to an Order of Release on Recognizance ("OREC"). Dkt. 10 (Hubbard Decl.) ¶ 6. In his declaration, Deportation Officer Hubbard asserts that petitioner's release was on the condition he "not change [his] place of residence without first securing written permission." *Id.*

On October 2, 2023, petitioner filed an application for relief from removal with United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 7. On March 1, 2024, the NTA was filed in immigration court. *Id.* ¶ 8. On July 2, 2024, petitioner filed his application for relief with the immigration court. *Id.* ¶ 11. On April 23, 2025, USCIS determined it lacked jurisdiction to adjudicate petitioner's application, and forwarded it to the immigration court. *Id.* ¶ 12. On August 18, 2025, petitioner admitted the allegations

in the NTA and conceded the charge of removability. *Id.* ¶ 15. No further proceedings were scheduled by the immigration court at that time. *Id.* ¶ 16.

Petitioner was also issued a United States Employment Authorization Document that expires on February 14, 2030. Dkt. 18-1 (March 27, 2026 Form I-213).

Petitioner indicates he subsequently left the United States to seek asylum in Canada. Dkt. 5 at 2. On March 25, 2026, BP apprehended petitioner near Blaine, Washington after determining that he had entered the United States from Canada. *Id.* ¶ 17. BP arrested petitioner pursuant to an I-200, Warrant of Arrest, and issued him a Notice and Order of Expedited Removal stating that: pursuant 8 U.S.C. 1225(b)(1)), DHS had determined petitioner was inadmissible to the United States under section 212(a)(7)(A)(i)(II) of the INA and that therefore he was subject to removal in that he was an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card or other valid entry document required by the INA in that he is not a citizen or national of the United States and on March 25, 2026, he illegally entered the United States at or near Blane, Washington, without inspection. Dkt. 11 (Clark Decl.) Ex. 2 (Determination of Inadmissibility/Expedited Removal), Ex. 3 (March 25, 2026, I-213), Ex. 4 (I-200).

The DHS Form I-213 dated March 25, 2026, reflects a “disposition” as “[petitioner] will be granted Expedited Removal.” *Id.*, Ex. 3 (March 25, 2026, I-213). However, the Form I-213 dated just two days later, March 25, 2026, reflects a “disposition” as “[petitioner] will be processed for Custody Redetermination.” Dkt. 18-1 (March 27, 2026, I-213).

On March 28, 2026, petitioner was booked into the Northwest ICE Processing Center ("NWIPC"). Dkt. 10 (Hubbard Decl.) ¶ 18.

On August 4, 2026, an immigration judge denied all of petitioner's applications for relief in his ongoing immigration proceedings related to his 2023 NTA and ordered him removed to Mauritania. *Id.* ¶ 19-22; Dkt. 11 (Clark Decl.), Ex. 5 (Removal Order). On August 24, 2026, petitioner appealed his removal order to the BIA; the appeal remains pending. Dkt. 10 (Hubbard Decl.) ¶ 23.

Petitioner filed the instant federal habeas petition on September 2, 2026. Dkt. 1. Respondents filed a response. Dkt. 9. Petitioner filed a "motion to request mailing evidence and treat my petition as unopposed" and subsequently filed a reply. Dkt. 12, 13. The Court issued an order directing a response to petitioner's motion and supplemental briefing on the status of petitioner's expedited removal proceedings and whether petitioner's active removal proceedings were based upon is original entry into the country and original NTA (in 2023), or his subsequent entry from Canada (in 2026). Dkt. 14. Respondents filed a response to the motion and supplemental brief. Dkts. 15, 16. Petitioner filed a supplemental reply. Dkt. 18.

## DISCUSSION

### A. Mandatory or Discretionary Detention

Petitioner argues he is subject to discretionary detention under 8 U.S.C. § 1226(a). Dkts. 5, 6. Respondents argue that petitioner, having crossed the border into Canada and returned to the United States, is detained under 8 U.S.C. § 1225, and his detention is mandatory. Dkt. 9.

Under 8 U.S.C. § 1226, the government has significant discretion with respect to noncitizens[1] who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States." As long as the detained noncitizen does not meet the requirements for detention under § 1226(c), the Attorney General may release the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Release is proper where the noncitizen "satisfies [the government] that he will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(a)(4).

If a noncitizen wishes to contest the initial custody determination — the denial or amount of bond, they have a right to do so before an immigration judge. 8 C.F.R. § 1236.1(d)(1); *see Rodriguez v. LaRose*, No. 3:25-CV-02940-RBM-JLB, 2025 WL 3456475, at *4 (S.D. Cal. Dec. 2, 2025) (differentiating between mandatory detention under § 1225 and discretionary detention under § 1226).

Under 8 U.S.C. § 1225, there are two categories of "applicants for admission"; an applicant for admission is a noncitizen who "arrived in the United States," or is "present" in the United States but has "not been admitted." 8 U.S.C. § 1225(a)(1). The first category of applicants for admission consists of individuals covered by § 1225(b)(1) and the second category consists of individuals covered by § 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1), applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is

[1] The Court uses the term "noncitizen" as equivalent to the term "alien" that is used in the statute. *See Nasrallah v. Barr,* 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

broader and "serves as the catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" (with specific exceptions). *Id.* at 287-88 (citing §§1225(b)(2)(A), (B)).

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an Immigration Judge or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)).

But, if a noncitizen "indicates either an intention to apply for asylum ... or a fear of persecution," then the inspecting immigration officer must refer that noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). In the event the asylum officer determines that the noncitizen has a credible fear of persecution, then the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *Banda*, 385 F. Supp. 3d at 1112.

The Supreme Court in *Jennings* has held "1225(b)(1) mandates detention 'for further consideration of the application for asylum,' § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention 'for a [removal] proceeding,' § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished 'consider [ing]' the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A)." 583 U.S. at 299.

In determining whether petitioners who have been apprehended on arrival, released, and later apprehended again, are subject to discretionary detention under § 1226(a) or mandatory detention under § 1225(b), the Court considers the government's treatment of the petitioner seeking habeas relief as "particularly relevant." *Del Valle*

*Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025). If the government treats petitioner as being subject to discretionary detention under § 1226, rather than § 1225 mandatory detention, and they provide no reasoning or factual and legal basis to justify mandatory detention, then the Court should rely on § 1226 as the applicable statutory authority. *Id.*; *see also, Romero v. Hyde*, 795 F. Supp.3d 271, 282 (D. Mass. 2025) (ICE documentation showed petitioner was detained under § 1226, even though respondents argued in response to the habeas corpus petition that mandatory detention was appropriate under § 1225(b)).

Here, the DHS Form I-213 dated March 25, 2026, reflects a "disposition" as "[petitioner] will be granted Expedited Removal." Dkt. 11 (Clark Decl.), Ex. 3 (March 25, 2026, I-213). And, the Form I-213 dated just two days later, March 25, 2026, reflects a "disposition" as "[petitioner] will be processed for Custody Redetermination." Dkt. 18-1 (March 27, 2026, I-213). The Immigration Judge's August 4, 2026, order refers to petitioner's charge under the original 2023 NTA. Dkt. 11 (Clark Decl.), Ex. 5 (Removal Order).

The Court concludes petitioner is detained under 8 U.S.C. § 1226(a). *See, S.K. v. Hermosillo*, No. 2:26-CV-00789-TLF, 2026 WL 936458 (W.D. Wash. Apr. 7, 2026) (§ 1226(a) applied where petitioner's initial 2023 NTA based on January 2023 entry into the U.S. charged him as "present in the United States without being admitted or paroled" not as an "arriving alien"; related immigration proceedings were dismissed in 2024; petitioner later went to Canada; after he returned to the United States and CBP custody in 2025, a new NTA was issued based on the new 2025 entry, later was

dismissed, another NTA issued based on petitioner's *initial* 2023 entry into the United States).

And even if § 1225(b) applied in this case, the "statutory authority to detain does not obviate Respondents' obligation to comply with due process." *Telenchana v. Hermosillo*, 2:26-cv-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. March 12, 2026).

**B. Fifth Amendment Due Process**

Respondents argue petitioner's re-detention was consistent with due process under the Fifth Amendment. Dkts. 9, 17.

The Court agrees with the analysis of *E.A. T.B v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. Aug. 18, 2025); therefore the Court reviews the government's decisions and actions to deprive petitioner of his liberty interests under the factors of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): The private interest affected by the official action; the risk of erroneous deprivation of such interest through the procedures used, the probable value of additional or substitute procedural safeguards; and the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming without deciding that the *Mathews* test applies in "the immigration detention context.").

**1. First *Mathews* Factor: Private Interest**

Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see*

*also Zadvyda*s, 533 U.S. at 696 (finding that a non-citizen has a liberty interest “strong enough” to challenge “indefinite and potentially permanent” immigration detention).

A released individual has had an “opportunity ‘to form the [ ] enduring attachments of normal life’” and thus has a heightened liberty interest, such as those which led the Supreme Court in *Morrisey* [*v. Brewer*] to impose due process requirements on parolees where the state seeks to revoke parole. *Carballo v. Andrews*, No. CV25-978-KES-EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471 (1972)); *E.A. T.-B.*, 795 F. Supp. 3d at 1320–21.

When petitioner was released from ICE custody for over two years, he “took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause.” *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025*)*. Petitioner was released on an OREC under § 1226(a) in 2023, he has no criminal history, he was granted employment authorization, and petitioner has a pending appeal of his removal order before the BIA.

Thus, the first *Mathews* factor weighs in petitioner’s favor.

**2. Second *Mathews* Factor: Risk of Erroneous Deprivation**

At the time of petitioner’s arrest in 2026, he was not provided with notice of the allegations or an opportunity to respond prior to, during, or immediately after his arrest. There was no neutral decisionmaker, no meaningful notice, and no meaningful opportunity to contest ICE’s assertions before petitioner’s detention. There was no assessment of petitioner’s flight risk or dangerousness to the community either prior to, during, or after his detention. Petitioner asserts, and the respondents do not dispute,

that he has no criminal history, that he was granted employment authorization, that during the over two years since his release from custody in 2023, he has been "following ICE's instructions closely" and has "done his best to comply with the given conditions." Dkt. 6 at 15. Respondents do not identify any specific violations of petitioner's OREC, nor do they allege that he missed any check-ins with ICE or any immigration court dates.[2] Rather, the record shows petitioner appeared for all of his immigration court dates prior to his re-detention.

The record shows that petitioner's continued detention was not based on an assessment of flight risk, dangerousness, or any alleged violation of the conditions of his release. *Singh v. Noem*, No. C26-0302-JLR, 2026 WL 879247, at *4 (W.D. Wash. Mar. 31, 2026) (finding the first and second *Mathews* factors weighed in favor of petitioner where the Government asserted but failed to detail the nature of the alleged violation of petitioner's conditions of release). And, although, the March 27, 2026, Form I-213, reflects that petitioner would be processed for "custody re-determination" there is no indication in the record, nor do the respondents contend, that this took place, or that petitioner's OREC was ever revoked.

---

[2] In his declaration, Deportation Officer Hubbard asserts that petitioner's release was on the condition he "not change [his] place of residence without first securing written permission." Dkt. 10 (Hubbard Decl.). But respondents do not identify this as a basis for the revocation of petitioner's OREC. And, even if they did, petitioner's alleged failure to update his address on its own in violation of an OREC is the type of circumstance that requires a pre-deprivation hearing. *See Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2026 WL 251798, at *2, 5 (W.D. Wash. Jan. 30, 2026) (finding petitioner faced a high risk of erroneous deprivation where the Government detained him for alleged failures to report address changes without providing him with clear notice of the basis for re-detention and a meaningful opportunity to be heard before the deprivation).

The Court finds, under the circumstances, the risk of erroneous deprivation is high and that petitioner should have been given notice of the reason for his re-detention and the opportunity to be heard at a pre-deprivation hearing where the respondents bear the burden of proof, under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), to justify immigration re-detention by clear and convincing evidence.

Thus, the Court finds the second *Mathews* factor favors petitioner.

**3. The Government's Interest**

Respondents' interest in civil detention without a hearing is low. *See E.A. T.B*, 795 F. Supp. 3d at 1323-24 (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.")).

Because the respondents have failed to demonstrate a substantial interest in reducing the due process protections, and because the administrative burden of providing a timely hearing is outweighed by the serious risk of erroneous deprivation, and the petitioner's strong interest in continued liberty, the third *Mathews* factor also weighs in petitioner's favor.

**C. Permanent Injunctive Relief**

Petitioner also seeks an order enjoined respondents from re-detaining him without notice and a pre-deprivation hearing before a neutral party.

Petitioner's request for injunctive relief is granted in part. Respondents shall not re-detain petitioner without providing adequate notice and a hearing before a neutral decisionmaker in accordance with due process in conjunction with any future re-detention while petitioner's removal proceedings are pending.

**D. Motion to Request Mailing Evidence and Treat Petition as Unopposed**

On September 28, 2026, petitioner also mailed a "motion to request mailing evidence and treat my petition as unopposed" which was received and filed on the docket on September 30, 2026. Dkt. 12. In the motion, petitioner indicated that as of September 28, 2026, he had not yet received respondent's response to his petition, which was due on September 18, 2026. *Id.* He requested the Court direct respondents to file proof of mailing and if there a showing of deliberate delay that the petition be granted as unopposed. *Id.* Petitioner subsequently filed a traverse/reply to the response on October 5, 2026.

The Court subsequently issued an order directing respondents to file a response to petitioner's motion, including proof of service of the response. Dkt. 14. Respondents filed a response to the motion with evidence that petitioner had received the response by certified mail on September 29, 2026. Dkt. 16.

The response to the petition itself also contains a certification from a legal assistant at the United States Attorney's Office that: "I certify that on this date [September 18, 2026], I arranged for service of the foregoing on the following non-CM/ECF participant, via Certified Mail, return receipt requested, postage prepaid, marked "Legal Mail, Open in Presence of Detainee", addressed" to petitioner at the NW Detention Center. Dkt. 9 at 10.

Based on the record, the Court does not find any evidence of intentional delay on the part of respondents.

Accordingly, petitioner's "motion to request mailing evidence and treat my petition as unopposed" (Dkt. 12) is DENIED.

//

//

**CONCLUSION**

For the reasons stated above, the petition for writ of habeas corpus (Dkts. 5, 6) is GRANTED IN PART AND DENIED IN PART, and the Court ORDERS as follows:

(1) The Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b).

(2) Petitioner's detention violates due process.

(3) The respondents shall release petitioner from custody within twenty-four 24 hours of the filing of this Order, under his most recent conditions of release – his OREC.

(4) No later than forty-eight (48) hours after petitioner's release the respondents must file with the Court a status report confirming the date and time they released petitioner.

(5) Respondents shall not re-detain petitioner without providing adequate notice and a hearing before a neutral decisionmaker in accordance with due process in conjunction with any future re-detention while petitioner's removal proceedings are pending.

(6) Respondents shall return any personal property, including personal identification documents (other than a passport) and employment authorization documents.

(7) Petitioner's "motion to request mailing evidence and treat my petition as unopposed" (Dkt. 12) is DENIED.

(8) The Clerk shall provide a copy of this order to counsel for respondents and to petitioner.

Dated this 17th day of November, 2026.

Theresa L. Fricke
United States Magistrate Judge